DANAHY, Judge.
At issue here is whether a collective bargaining agreement between a school board and the representative of its teachers may provide a binding arbitration procedure for review of the school board’s decision to discharge a teacher on continuing contract status, or whether such a teacher is required to pursue an appeal to the Department of Education as provided in Section 231.36(6), Florida Statutes (1977). The trial judge ruled that the statutory avenue of appeal must be pursued to the exclusion of any alternative avenue provided in the collective bargaining agreement. In order to reach that decision, the trial judge first determined that a circuit court has subject matter jurisdiction to render a declaratory judgment concerning the arbitration provisions of a collective bargaining agreement in the public employment field. We agree with the trial judge on the question of subject matter jurisdiction in this case, but hold that he was in error in ruling that the arbitration provisions of the collective bargaining agreement did not provide an alternative means of review to the discharged teacher. Therefore, we reverse.
Section 231.36(6) empowers a school board to discharge a teacher during the school year on grounds of immorality, misconduct in office, incompetency, gross insubordination, wilful neglect of duty, drunkenness, or conviction of any crime involving moral turpitude, provided that the teacher is given the opportunity to be heard at a public hearing after at least 10 days written notice of the charges against him. The statute further provides that if the teacher is on continuing contract status, he *1008 may appeal the decision of the school board to the Department of Education, and in such a case the decision of the Department shall be final as to the sufficiency of the grounds for the discharge.
Appellant Richard H. Wood (Wood) is a teacher who was employed on continuing contract status by appellee District School Board of De Soto County, Florida (the school board), pursuant to a collective bargaining agreement (the agreement) between the school board and appellant De Soto County Teachers’ Association, FEA/UNITED, AFT, AFL-CIO (the union). The agreement provides that a teacher shall be discharged for just cause only. It sets forth in a separate article a grievance procedure for determining whether a violation by the school board exists involving the interpretation or application of the terms of the agreement. The grievance procedure includes four levels. The first three levels require a review of the grievance by the principal, the superintendent, and the school board, respectively. The fourth and final level is binding arbitration.
Wood was charged with wilful neglect of duty and gross insubordination, and a public hearing was scheduled by the school board on those charges. Approximately 30 minutes prior to the commencement of the public hearing, Wood filed with the school board a document described therein as a “grievance” in which he asserted that the charges against him were without merit and, in any event, did not constitute “just cause” under the agreement. The public hearing on the charges commenced as scheduled and was continued until June 30, 1977. Wood participated fully in the hearing, presenting evidence and arguments on his behalf. At the conclusion of the hearing on June 30, the school board found Wood guilty of the charges against him and voted that he be discharged. Wood did not seek review of that decision by the Department of Education as provided in Section 231.-36(6).
On July 7, 1977, the union, on behalf of Wood, filed a demand for arbitration pursuant to the agreement. The school board did not respond to that demand, having determined to take the position that Wood’s sole avenue for review of the school board’s decision was by appeal to the Department of Education pursuant to Section 231.36(6) and, therefore, no subject for arbitration existed as between the school board and Wood.
Because of the school board’s refusal to participate in the arbitration proceedings demanded, the union filed an unfair labor charge with appellant Public Employees Relations Commission (PERC) on July 27, 1977.
On August 8, 1977, the school board initiated this suit by filing a complaint for declaratory judgment in the Circuit Court for De Soto County requesting the court to declare (1) that Wood’s sole remedy concerning his employment status with the school board was by appeal to the Department of Education pursuant to Section 231.-36(6); (2) that because Wood had failed to appeal his dismissal, no issue subject to arbitration existed as between the school board and Wood; (3) that the school board was not obligated to participate in the arbitration proceedings demanded; and (4) that the actions of the school board did not constitute an unfair labor practice within the meaning of the Florida Statutes.
PERC then filed with this court a suggestion for writ of prohibition alleging that PERC had exclusive jurisdiction over the subject matter.of the complaint for declaratory judgment and that the De Soto County Circuit Court was, therefore, without jurisdiction. The school board thereupon withdrew that portion of its complaint which requested the circuit court to declare that the school board’s actions did not constitute an unfair labor practice. This court denied the suggestion for writ of prohibition without opinion.
PERC then filed a motion to intervene in the declaratory judgment suit and a motion to dismiss that suit on the ground that the circuit court lacked jurisdiction. On September 21, 1977, PERC issued a complaint charging the school board with an unfair labor practice.
*1009 The trial judge granted PERC’s motion to intervene but denied its motion to dismiss, whereupon PERC filed with this court another suggestion for writ of prohibition, asserting that the subject matter of the suit involved an unfair labor practice and this matter was in the exclusive jurisdiction of PERC. This court again denied the suggestion for writ of prohibition, without opinion.
The school board filed an answer to PERC’s complaint against it and a hearing on the unfair labor practice charge was held before a PERC hearing officer on November 2, 1977. The school board fully participated in that hearing and defended itself on the merits, maintaining throughout, however, that PERC should defer to the exercise of jurisdiction in the matter by the Circuit Court of De Soto County, before which the suit for declaratory judgment was then pending.
The hearing officer found that the school board was guilty of an unfair labor practice by reason of its refusal to arbitrate, and then proceeded to consider what the hearing officer termed the school board’s “affirmative defenses.” Among these was the school board’s contention that Wood failed to comply with the procedural requirements of the agreement concerning the processing of a grievance and, furthermore, that Wood had elected to pursue the statutory procedure concerning his discharge by participating in the public hearing conducted by the school board, which the school board denominated a “Section 231.36(6) hearing.” The hearing officer concluded that the school board was not justified on these grounds in refusing to arbitrate, but should have presented these issues to the arbitrator for resolution.
As to the contention of the school board that PERC should defer to the jurisdiction of the Circuit Court of De Soto County, the hearing officer characterized the circuit court proceeding as an attempt by the school board to obtain a declaration by the court that the school board had not committed an unfair labor practice in refusing to arbitrate, and ruled that PERC’s jurisdiction over unfair labor practice questions is exclusive.
With regard to the effect on the school board’s obligation to arbitrate of Wood’s failure to appeal the school board’s decision to discharge him, the PERC hearing officer felt this, too, to be an issue to be decided by the arbitrator. He further ruled that, even assuming Wood was precluded from reliti-gating before the arbitrator the truth of the facts upon which the school board based its decision, there would still remain for resolution by the arbitrator the question whether those facts constituted “just cause” within the meaning of the agreement.
The PERC hearing officer recommended that PERC enter an order requiring the school board to cease and desist from refusing to process Wood’s grievance to final and binding arbitration. His recommended order was entered on April 18, 1978, and is part of the record on this appeal; but the PERC proceedings are not, of course, before this court for review. Our references to the PERC hearing officer’s conclusions and recommendations are solely for the purpose of describing the issues and discussing the appropriate roles of PERC, the court, and an arbitrator in a situation such as that presented in this case.
The final hearing in the declaratory judgment proceedings was held on April 19, 1978, after which the trial judge entered the declaratory judgment from which the union, Wood, and PERC (collectively “appellants”) have appealed. That judgment declared that the court had subject matter jurisdiction, referring to the decisions of this court denying PERC’s suggestions for writ of prohibition as “the law of the case” regarding the court’s subject matter jurisdiction. The judgment went on to declare that Wood’s statutory right of appeal was exclusive and his failure to pursue that appeal made the decision of the school board final, not reviewable either by arbitration proceedings or judicially. Wood and the union were enjoined from further pursuing the demand for arbitration and PERC was enjoined from taking any action or entering any order inconsistent with the determinations made in the final judgment.
*1010 THE QUESTION OF JURISDICTION
Appellants vigorously argue on this appeal that the circuit court did not have subject matter jurisdiction in this case. The school board’s sole response to that argument is that the two prior denials by this court of PERC’s suggestions for writs of prohibition stand as the “law of the case” insofar as the subject matter jurisdiction of the circuit court is concerned, so that this court is now foreclosed from considering that issue on this appeal. The school board points out that the precise jurisdictional point now urged for reversal was urged on the unsuccessful applications for prohibition. In both instances this court ordered that a response be filed, and oral arguments were heard on the merits of the jurisdictional question. The school board asks us to interpret our denials of the writ as rulings on the merits of the jurisdictional question which now have a res judicata effect.[1]
We have not found a Florida case in which this precise question was presented, but decisions in other jurisdictions on the point have established the rule that the denial of a writ of prohibition without opinion is not res judicata unless the sole possible ground of the denial was that the court acted on the merits of the jurisdictional question, or unless it affirmatively appears that such denial was intended to be on the merits. These cases are collected in an annotation at 21 A.L.R.3d 206, Section 18 (1968). We approve and adopt that rule.
That the denial of a suggestion for writ of prohibition may be for reasons other than the jurisdictional point is made clear by the recent opinion of the Florida Supreme Court in English v. McCrary, 348 So.2d 293 (Fla.1977), in which the Court discussed at length the nature of proceedings for writ of prohibition and the circumstances in which such a writ is appropriately granted. The Court pointed out that prohibition is an extraordinary writ, a prerogative writ, extremely narrow in scope and operation, and is to be invoked only in emergency cases to forestall an impending present injury where the person seeking the writ has no other appropriate and adequate legal remedy, as by appeal from the judgment rendered by the trial court in the cause.
It would be pure speculation to attribute any particular reasoning to the majority of the two prior panels of this court which decided that PERC’s suggestions for writ of prohibition should be denied. The point is that those denials could have rested on reasons other than the merits of the jurisdictional question posed in those prior proceedings. This being the case, we hold that this court’s prior denials of PERC’s suggestions for writ of prohibition do not foreclose us from considering the jurisdictional issue on this appeal.
In reaching this conclusion, we have given careful consideration to a decision of the Florida Supreme Court which appears to express the opposite opinion. In State ex rel. Carter v. Wigginton, 221 So.2d 409 (Fla.1969), the Court had previously denied without opinion a suggestion for writ of prohibition directed to a circuit court. The circuit court thereafter rendered its final judgment, which was appealed to the district court of appeal. That court reversed on the ground that the circuit court lacked jurisdiction in the matter. The Supreme Court said “[w]e think it implicit in our order . denying the suggestion for writ of prohibition to the Circuit Court that, on the law and facts involved, the Circuit Court had jurisdiction of the cause and, in that respect, the law of the case was established.”
We do not view the Wigginton decision as in conflict with our decision here. We believe that the court was interpreting its *1011 prior action on the basis of the particular procedural posture of that case, and its holding does not compel rejection of the rule which we have here embraced. We distinguish for the same reason the decision of the First District Court of Appeal in State v. Mims, 267 So.2d 52 (Fla.1st DCA 1972), in which the court referred to a denial by the Supreme Court of a petition for writ of prohibition as “authority for the proposition” that jurisdiction existed, and expressed agreement with that proposition.
Having thus disposed of the school board’s argument that we are precluded on this appeal from considering the question whether the circuit court had subject matter jurisdiction in this case, we have proceeded to address that issue.
We start with the fact that the circuit courts of this state have jurisdiction to render declaratory judgments determining whether a matter in dispute comes within the scope of an arbitration agreement. Sections 86.011, 86.021, and 86.101, Florida Statutes (1977); Bell v. Associated Independents, Inc., 143 So.2d 904 (Fla.2d DCA 1962); Annot., 12 A.L.R.3d 854 (1967). The narrow question, then, is whether any applicable statute deprives the circuit courts of jurisdiction in cases involving arbitration provisions of collective bargaining agreements in the public employment area. The applicable statutes are Sections 447.201 et seq., Florida Statutes (1977), which are generally referred to as the Public Employees Relations Act. We adopt that terminology and will refer to these statutes collectively as “the Act” or as “PERA.”
PERC, the union, and Wood argue that the Act gives PERC exclusive jurisdiction in all cases involving activities which are arguably unfair labor practices, citing as support for that proposition the decision of this court in Public Emp. Rel Com’n v. Fraternal Ord. of Pol., etc., 327 So.2d 43 (Fla.2d DCA 1976), and the decision of the Fourth District Court of Appeal in Maxwell v. School Board of Broward County, 330 So.2d 177 (Fla. 4th DCA 1976).
In Public Emp. Rel. Com’n v. Fraternal Ord. of Pol., supra, this court held that a circuit court does not have jurisdiction to determine whether an activity is an unfair labor practice under the Act. In reaching that conclusion we observed that the Act bears similarities to the National Labor Relations Act (NLRA) and the philosophy expressed by the provisions relating to administration jurisdiction over unfair labor practices seems to be the same in either case. It is well established that jurisdiction to determine unfair labor practice matters under the NLRA is pre-empted to the National Labor Relations Board (NLRB). We adopted that pre-emption doctrine in concluding that PERC has exclusive jurisdiction to determine unfair labor practice questions under PERA. The same analysis was applied in Maxwell v. School Board of Broward County, supra. We would not digress from the propositions of law and the holdings in these cases; however, neither involved the situation presented here and, therefore, do not dispose of the jurisdictional issue in this case.
Following the reasoning that decisions construing the NLRA as to jurisdictional matters are pertinent and instructive in resolving the issue of jurisdiction under PERA, we can proceed to the fact that if the plaintiff in this case were a private employer in an industry affecting interstate commerce, the circuit court clearly would have subject matter jurisdiction. Under the NLRA, the breach of a collective bargaining agreement is not per se an unfair labor practice. 29 U.S.C.A. Section 158; Annot., 6 A.L.R.Fed. 589 (1971). Federal courts have jurisdiction to render declaratory judgments concerning collective bargaining agreements. 29 U.S.C.A. Section 158; Annot., 16 L.Ed.2d 1143, Section 8.5 (1967). Since federal courts have jurisdiction in this respect, state courts may also have jurisdiction under their own laws. As we have seen, circuit courts in Florida have such jurisdiction under Florida law.
The fact that an activity may be both a breach of a collective bargaining agreement and an unfair labor practice *1012 does not change this result. In such cases there is concurrent jurisdiction among the NLRB, the federal courts, and the state courts. Local 495 UAW v. Diecast Corporation, 52 Mich.App. 372, 217 N.W.2d 424 (1974); Annot., 16 L.Ed.2d 1143, Section 14 (1967). As a result, the parties have choices of forums and remedies. Annot., 6 A.L.R. Fed. 589, Section 2(b) (1971). Specifically, federal and state courts have jurisdiction under the NLRA to render declaratory judgments concerning the arbitration provisions of collective bargaining agreements. Annot., 16 L.Ed.2d 1143, Sections 8.5 and 11(b) (1967).
We find no provision of PERA which persuades us that the result should be different where suit is brought in a circuit court of this state by a public employer for a declaratory judgment construing the arbitration provisions of a collective bargaining agreement. Under the Act, the breach of a collective bargaining agreement is not per se an unfair labor practice. The practices enumerated in the Act as unfair labor practices are substantially the same as those enumerated in the NLRA, with one addition. That addition is the act of “refusing to discuss grievances in good faith pursuant to the terms of the collective bargaining agreement.” Section 447.501(f), Florida Statutes (1977). We note in passing that the PERC hearing officer seemed to feel that a breach of the arbitration provisions of a collective bargaining agreement is per se an unfair labor practice under subparagraph (f) of Section 447.501. We express no opinion on that point; we need only find, and we do, that where the breach of a collective bargaining agreement may also be an unfair labor practice under PERA, the circuit courts nevertheless have jurisdiction to provide, a remedy for that breach, including jurisdiction to enter a declaratory judgment that a particular activity does not constitute a breach.
Where the matter concerns arbitration, it is for the court, and not the arbitrator, to determine whether a dispute is arbi-trable as being within the scope of the arbitration provisions of a collective bargaining agreement. Annot., 24 A.L.R.2d 752, Section 7 (1952).
In matters pertaining to breach of contract, which involve questions of law, there is no PERC expertise which makes PERC better qualified than a court to determine whether a breach of contract has occurred. The resolution of such a dispute does not involve the administration of the basic policy of PERA, and judicial action on the point of law will not disturb the policy of the Act or conflict with PERC’s responsibility to develop a body of substantive public sector labor law. Whether the breach of a collective bargaining agreement is an unfair labor practice is properly a question for PERC to decide; whether a breach of a collective bargaining agreement exists is an appropriate question for a court to decide.
Appellants have presented a further argument in support of their contention that the circuit court was without jurisdiction. They invoke the doctrine of exhaustion of administrative remedies and assert that this doctrine prohibits a circuit court from granting declaratory relief to a party who can obtain administrative relief. That doctrine, however, applies where judicial review of administrative action is sought before channels of administrative review are pursued. This case does not involve review of PERC action, and the doctrine clearly does not apply. Odham v. Foremost Dairies, Inc., 128 So.2d 586 (Fla.1961).
We hold that the trial judge in this case had jurisdiction to determine whether the matter of Wood’s discharge is within the scope of the arbitration provisions of the collective bargaining agreement. We disagree, however, with the trial judge’s decision on that issue.
THE QUESTION OF ARBITRATION
We find several provisions of PERA pertinent to the question whether a collective bargaining agreement may offer arbitration as an alternative to an appeal under Section 231.36(6) of the decision of a school board to discharge a teacher on continuing contract status.
*1013 Section 447.309(1) mandates that, once an employee organization has been certified to represent a group of public employees, that organization and the public employer shall bargain collectively in the determination of the wages, hours, and terms and conditions of employment of the public employees within the bargaining unit. It cannot be disputed that matters pertaining to the discharge of a teacher are terms and conditions of employment.
Section 447.401 provides that each public employer and bargaining agent shall negotiate a grievance procedure to be used for the settlement of disputes involving the interpretation or application of a collective bargaining agreement and that such a procedure shall have as its terminal step a final and binding disposition by an impartial neutral mutually selected by the parties. This section further provides that all public employees shall have the right to a fair and equitable grievance procedure. We agree with appellants that the legislature has made it clear that a collective bargaining agreement must provide a procedure for binding arbitration to settle disputes concerning the discharge of a public employee.
However, subparagraph (3) of Section 447.309, concerning collective bargaining and the subjects of collective bargaining, provides as follows:
If any provision of the collective bargaining agreement is in conflict with any law . the chief executive officer [of the public employer] shall submit to the appropriate governmental body having amendatory power a proposed amendment to such law . . . Unless and until such amendment is enacted or adopted and becomes effective, the conflicting provisions of the collective bargaining agreement shall not become effective.
The question, then, is whether the arbitration of a grievance pertaining to the discharge of a teacher on continuing contract status conflicts with the Section 231.-36(6) remedy of appeal or whether such an arbitration provision and Section 231.36(6) may peacefully coexist as alternative remedies available to the discharged teacher.
Insofar as a career service employee is concerned, Section 447.401 specifically provides that such an employee shall have the option of utilizing the civil service appeal procedure or the grievance procedure in a collective bargaining agreement, but cannot use both the civil service appeal and the grievance procedure. We do not construe this provision as meaning that in any other case, a statutory appeal procedure and a grievance procedure in a collective bargaining agreement cannot offer alternative remedies. On the contrary, it seems to us that the legislature was simply aware of one specific instance in which there is a statute providing an appeal procedure to a particular group of public employees, and approved the proposition that the statutory procedure and the grievance procedure should be available alternatively to such employees.
Our research has led us to cases decided in New York and New Jersey which we find helpful in resolving the question before us. In Board of Education v. Associated Teachers, 30 N.Y.2d 122, 331 N.Y.S.2d 17, 282 N.E.2d 109 (1972), the Court of Appeals of New York considered the fact that the public employees relations act in New York contemplated that collective bargaining agreements should provide for arbitration of grievances, while that state’s tenure law gave discharged teachers two methods of statutory appeal to challenge a school board’s decision. The court said “[b]ut it does not follow from this that the [school] Board is inhibited from agreeing that the teacher may choose arbitration as a third method of reviewing its determination.” The court rejected the suggestion that a discharged teacher could choose to follow the statutory appeal procedure and, having lost in that effort, then choose to submit the matter to arbitration, or vice versa. The court said that once the controversy is heard and a decision made either by the arbitrator or through the statutory appeal procedure, that would be the end of the matter.
The Supreme Court of New Jersey reached the opposite conclusion in Dunellen *1014 Bd. of Education v. Dunellen Ed. Ass’n, 64 N.J. 17, 311 A.2d 737 (1973). It distinguished the New York decision on the ground that the New Jersey public employees relations act expressly provided that no provision in that act “shall ‘annul or modify any statute or statutes of this State.’ ” (The New York opinion did not indicate whether the New York law contained a similar provision.) The New Jersey court felt that this was a strong qualifying statement and, absent further clarifying legislation, the court was not prepared to construe the general provision of the New Jersey law authorizing the parties to agree on binding arbitration procedures as embodying legislative contemplation that the parties may agree on such arbitration in total replacement of the statutory proceedings provided for the dismissal of a teacher.
After the cited New Jersey decision, the New Jersey legislature changed the words “annul or modify any statute or statutes of this state” to “annul or modify any pension statute or statutes of this state.” Thereafter the New Jersey court indicated that it would reach the same result as did the New York court on the question whether arbitration provisions in a collective bargaining agreement could validly provide a remedy to a discharged teacher in addition to the statutory remedy. The court felt free to adopt the general proposition that a contractual provision affording public employees rights or benefits in excess of those provided by a statute is valid and enforceable. State v. State Supervisory Emp. Ass’n, 78 N.J. 54, 393 A.2d 233 (1978).
We agree with the approach of the New York court in Board of Education v. Associated Teachers, supra, notwithstanding that our statute provides that if a provision of a collective bargaining agreement and a statute are in conflict, the statute will prevail. We do not feel, as the New Jersey court did in Dunellen Bd. of Education v. Dunellen Ed. Ass’n, supra, that there is a conflict between the statutory appeal procedure available to a discharged teacher and the provision of a collective bargaining agreement providing for arbitration as a means of reviewing the school board’s decision.
The school board argues, however, that where a procedure for administrative review of administrative action is provided, that procedure must be followed to the exclusion of any other system of review. That proposition correctly states a rule of law, but it does not apply here. The rule means that judicial review of administrative action generally may not be sought without first pursuing an available avenue of administrative review; it does not prohibit an agreement that an alternative nonjudicial review may be pursued in lieu of administrative review. Odham v. Foremost Dairies, Inc., supra.
We note in passing that there do appear to be some conflicts between the collective bargaining agreement involved in this case and Section 231.36(6). The agreement provides that a teacher may be discharged only for “just cause,” and there is some opinion among appellants that the words “just cause” are more narrow in scope than the specific statutory grounds required for discharge of a school teacher under Section 231.36(6). In this case Wood asserted in his grievance that “wilful neglect of duty and gross insubordination” (two of the statutory grounds) did not amount to “just cause” under the collective bargaining agreement. That argument would have to fail in the face of the provision in Section 447.309(3) that where a statute and a provision of a collective bargaining agreement are in conflict, the statute prevails. When given legislative authority, a school board cannot restrict its exercise of that authority. Cf. Lake County Ed. v. School Bd. of Lake County, 360 So.2d 1280 (Fla.2d DCA 1978) (school board could not enter into collective bargaining agreement providing that its decision not to reappoint a nontenured teacher must be based on proper cause, since statute gave school board unrestricted prerogative to decide whether nontenured teachers should be reappointed); 1941 Op.Atty.Gen. 250 (Board of Public Instruction may not make binding agreement that teachers shall be continued in employment indefinitely until terminated *1015 for sufficient reason after hearing before the board, since statute required board to act on nomination of teachers by the trustees of the school district and board could not modify the statutory procedure).
Similarly, we observe that the collective bargaining agreement provides that the school board need not afford a hearing to a teacher on a grievance pertaining to the teacher’s discharge or indeed render any decision on the matter at all as a full board. That provision conflicts with Section 230.-23(5), which gives the school board alone the power and duty to discharge teachers. It also conflicts with Section 231.36(6), which provides that a school board may not discharge a teacher during a school year except after a public hearing. We feel it is clear that the legislature did not intend to permit a public employer to negotiate a collective bargaining agreement in which it relinquishes a statutory duty or in which its employees relinquish statutory rights. The agreement may add to statutory rights and duties, but may not diminish them.
We hold that Wood had the right to elect between the appeal procedure available to him under Section 231.36(6) and the binding arbitration procedure provided in the collective bargaining agreement. We note that the school board argued before the PERC hearing officer that Wood did not comply with the grievance procedure provided in the agreement, and that by participating in the public hearing conducted by the school board, he elected to proceed pursuant to Section 231.36(6). Anticipating that the board may reassert these contentions, we observe that these are matters which should be resolved by the arbitrator. Annot., 24 A.L.R.2d 752, Section 9 (1952).
The declaratory judgment in favor of the school board is reversed.
REVERSED.
BOARDMAN, Acting C. J., and SCHEB, J., concur.

. Although the school board speaks in terms of the law of the case having been established on the jurisdictional point by these previous denials of writ of prohibition, the applicable doctrine is res judicata since proceedings for writs of prohibition are original proceedings before this court and thus the denials in those proceedings do not constitute prior rulings by this court in the same case now before us for review. The doctrines of “law of the case” and res judicata are somewhat similar, but the latter has a more binding effect and the distinction is a significant one. 1 Moore’s Federal Practice (2d ed. 1974), Paragraph 0.405(2).